UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM A. KENNEDY III, M.D. *and* WILLIAM A.
KENNEDY III MD PLLC,

                                    Plaintiffs,

                    -v-

UNITEDHEALTH GROUP INCORPORATED,
UNITEDHEALTHCARE INSURANCE COMPANY OF
NEW YORK, UNITEDHEALTHCARE OF NEW YORK,
INC., OXFORD HEALTH PLANS (NY), INC., *and*
OXFORD HEALTH INSURANCE, INC.

                                    Defendants.

---

25 Civ. 432 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to remand to state court. On December 6, 2024,

plaintiffs William A. Kennedy III and William A. Kennedy III MD PLLC (collectively,

"Kennedy") filed this action against UnitedHealth Group Incorporated, UnitedHealthcare

Insurance Company of New York, UnitedHealthcare of New York, Inc., Oxford Health Plans

(NY), Inc., and Oxford Health Insurance, Inc. (collectively, "United") in New York State

Supreme Court in Manhattan. Dkt. 1-1 ("Complaint"). On January 15, 2025, United removed

the action to this Court. It based the removal on 28 U.S.C. § 1331, asserting that Kennedy's

claims, although brought under state law, implicate federal questions. Dkt. 1 (the "Notice of

Removal").

Kennedy's Amended Complaint, Dkt 22 ("AC"), the operative complaint today, contains

two claims, both under New York law: for (1) breach of implied-in-fact contracts and (2) unjust

enrichment.[1]  Its gravamen is that United unlawfully denied Kennedy compensation for

emergency medical services he had rendered to members of United's health plans in his capacity

as an on-call physician.  In moving to remand to state court, Kennedy argues that United is

wrong to argue that these claims embed federal questions and that removal was therefore

improper.

For the reasons that follow, the Court agrees with Kennedy and grants the remand

motion.

## I.    Background

### A.    Factual Overview[2]

#### 1.    Kennedy's Emergency Care Practice

Kennedy is an otolaryngologist whose practice focuses on emergency ear, nose, and

throat—or "ENT"—care.  He is a member of the voluntary medical staff at multiple hospitals

within the Northwell Health network, on Long Island and in New York City.  AC ¶¶ 2, 55.  But

he is not stationed at a specific hospital.  Rather, he is called as needed by those hospitals'

emergency departments, overnight and on weekends, to provide medical services for children

and adults experiencing "acute respiratory obstruction"—i.e., a block in the airway that makes it

---

[1] The AC styles its request for declaratory relief as a third cause of action.  However, "[d]eclaratory judgments . . . are remedies, not causes of action."  *Mulgrew v. U.S. Dep't of Transp.*, 750 F. Supp. 3d 171, 210 (S.D.N.Y. 2024) (quoting *Manrique v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 5745717, at *8 (S.D.N.Y. Dec. 2, 2021)) (citation omitted).

[2] The facts in this section are drawn solely from the AC.  "On a motion to remand for lack of subject matter jurisdiction," the Court "assume[s] the truth of non-jurisdictional facts alleged in the complaint . . . ."  *Guzman v. First Chinese Presbyterian Cmty. Affairs Home Attendant Corp.*, 520 F. Supp. 3d 353, 356 (S.D.N.Y. 2021); *see also Republic of Kazakhstan v. Chapman*, 585 F. Supp. 3d 597, 602–03 (S.D.N.Y. 2022).  Courts "may consider materials outside of the complaint, such as documents attached to a notice of removal or a motion to remand" if they "convey information essential to the court's jurisdictional analysis."  *Guzman*, 520 F. Supp. 3d at 356.  Here, however, the Court has not found the extra-pleading materials supplied by the parties to shed light on the limited legal issue presented, and thus has not considered them.

difficult to breathe—and in need of urgent medical treatment. *Id.* ¶ 18. These services include conducting diagnostic procedures, performing emergency surgery, and consulting with the patient's attending physician to formulate a treatment plan. *Id.* ¶ 19.

The AC alleges that, before or as a condition of rendering emergency care, Kennedy does not seek "an assignment of benefits" under his patients' health plans.[3] *Id.* ¶ 25. He does not do so, the AC explains, because both federal and state law *require* on-call physicians like him to provide emergency medical treatment to patients in need of care without regard to their insurance status and/or ability to pay. *Id.* ¶¶ 23–24.

### 2.    Kennedy's Dealings with United Prior to 2021

United insures, operates, and administers health plans throughout the United States. *Id.* ¶ 30. Between 2012 and 2021, the AC alleges, Kennedy filed claims with United for emergency services he rendered to customers of its health plans, and United "frequently" paid 100% of those billed charges. *Id.* ¶ 42. "In some instances," United and Kennedy negotiated a "reduced payment" on Kennedy's claims, but these payments "were typically no less than 90% of the billed charges," the AC alleges. *Id.* ¶ 44.

### 3.    Kennedy's Dealings with United from 2021 Onward

In or about 2021, United's Special Investigations Unit ("SIU") opened an investigation into Kennedy's billing practices. On or about January 1, 2022, the AC alleges, United placed a flag on Kennedy's National Provider Identification ("NPI") number and stopped payment on his

---

[3] An "assignment of benefits" is a legal agreement whereby a health insurance policyholder transfers her right to receive insurance benefits to her healthcare provider. Such an assignment authorizes the provider to bill—and receive payment directly from—the patient's health insurance company. *See* AC ¶ 25.

claims.[4] *Id.* ¶ 4. In or about July 2024, SIU reviewed a random sample of Kennedy's claims and found that "they were overwhelmingly supported by the underlying procedure notes and medical record." *Id.* ¶ 58. However, the AC alleges, United has not removed the flag or resumed paying Kennedy's claims, notwithstanding "years of overtures and appeals" by Kennedy and his "full cooperation with the SIU's investigation." *Id.* ¶ 57.

The AC alleges that Kennedy has continued to provide emergency care to members of United's health plans while the flag remains in place. In total, the AC alleges, United has denied some 182 claims, totaling more than $15 million, submitted by Kennedy. *See id.* ¶ 4.

## B.    Procedural History

On December 6, 2024, Kennedy filed an initial Complaint in New York State Supreme Court in Manhattan. Dkt. 1-1. It brought claims for breach of implied-in-fact contracts and unjust enrichment. *Id.* ¶ 61–76. It sought damages and a declaration that United is obligated to resume payment of Kennedy's claims. *Id.* ¶ 77–82.

Salient here, the Complaint alleged that United was unjustly enriched by failing to pay Kennedy for services he was required to provide "under Federal and New York law." *Id.* ¶ 71. In support of its assertion that Kennedy had been legally obligated to provide emergency services to United customers for which he had not been compensated, it cited the federal Affordable Care Act ("ACA"), Pub. L. No. 111–148, 124 Stat. 119 (2010) and Emergency Medical Treatment

---

[4] United's SIU is "tasked with rooting out fraud, waste, and abuse among health care providers." *Id.* ¶ 33. The SIU periodically audits healthcare providers and places a "flag" on the NPI number of providers it believes are engaged in fraudulent or improper billing. *Id.* ¶ 33–34. Once the SIU "flags" a provider, payment of all claims billed under that provider's NPI number are automatically blocked. *Id.* ¶ 34.

and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and various provisions of New York law.[5]

AC ¶ 78.

On January 15, 2025, United removed the case to this Court. Dkt. 1. It asserted that

federal question jurisdiction exists under 28 U.S.C. § 1331 because Kennedy's Complaint

"raise[d] multiple substantial federal questions" under the ACA and EMTALA. *Id.* at 7 (citation

omitted).[6]

On February 18, 2025, Kennedy filed the AC. It excised all references to the ACA but

maintained its reference to EMTALA.

On February 18, 2025, Kennedy moved to remand the case to New York state court.

Dkt. 25 ("Kennedy Br."). On March 11, 2025, United opposed. Dkt. 26 ("United Br."). On

March 21, 2025, Kennedy replied, Dkt. 30 ("Kennedy Reply Br.").[7]

---

[5] The Complaint identified as relevant N.Y. Pub. Health ("NYPHL") § 2805-b(2)(b), N.Y. Fin.
Serv. Law ("NYFSL") § 605(a), and the New York Emergency Medical Services and Surprise
Bills Act (the "New York Surprise Bill Law"), NYSFL § 601 *et seq.*

[6] On January 29, 2025, Kennedy filed a letter asking the Court to hold all deadlines in abeyance
pending resolution of Kennedy's anticipated motion to remand for lack of subject-matter
jurisdiction. Dkt. 11 (the "stay request"). On January 29, 2025, United opposed Kennedy's stay
request, Dkt. 13, and moved to dismiss the Complaint under Federal Rule of Civil Procedure
12(b)(6), Dkt. 14. On January 30, 2025, the Court, finding that Kennedy's anticipated motion to
remand was "colorable," granted his stay request. Dkt. 17 at 1. It explained that the "existence
of subject-matter jurisdiction, implicated by the[] anticipated motion to remand, must be
established before the Court may test the legal sufficiency of the Complaint under Rule
12(b)(6)." *Id.*

[7] On March 24, 2025, United moved for leave to file a sur-reply, ostensibly to respond to a
declaration attached to Kennedy's reply brief. Dkt. 31. The Court, however, has not considered
that declaration, because, as explained in this decision, the pleadings are facially clear that
federal subject-matter jurisdiction does not exist. *See Guzman*, 520 F. Supp. 3d at 356. The
Court accordingly denies United's motion for leave to file a sur-reply.

## II.    Discussion

Kennedy moves for remand on the ground that the Court lacks subject-matter jurisdiction under 28 U.S.C. § 1331, which provides for jurisdiction based on the presence of a federal question and which is the sole basis on which United removed.[8]  Kennedy is correct.  The AC does not bring any claim under federal law.  And the two New York law claims that it brings do not fit within the "special and small category" of state-law claims that embed federal issues so as to give rise to federal question jurisdiction.  *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citation omitted).

The governing principles are familiar.  28 U.S.C. § 1331 confers jurisdiction on federal courts to resolve cases "arising under" federal law.  A case typically "arises under" federal law "when federal law creates the cause of action asserted."  *Id.*  On "rare occasions," however, § 1331's jurisdictional grant "also covers a suit containing state-law claims alone, because one or more of them 'necessarily raise[s]' a 'substantial' and 'actually disputed' federal question."  *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (quoting *Gunn*, 568 U.S at 258) (alteration in original); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

Under the "*Grable-Gunn* test" governing this context, federal question jurisdiction over a state-law claim lies only where a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.  *Gunn*, 568 U.S. at 258.  "Where all four of these requirements are met . . . jurisdiction is proper."  *Id.*  Importantly, "the determination of jurisdiction is based only on the allegations in the plaintiff's 'well-pleaded complaint'—not on any issue the

---

[8] It is undisputed that diversity jurisdiction, *see* 28 U.S.C. § 1332, is lacking.  *See* Notice of Removal at 2.

defendant may raise." *Royal Canin*, 604 U.S. at 26 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9–10 (1983)).

Here, United argues that the AC's second cause of action—for unjust enrichment under New York law—supports federal jurisdiction. United notes that, in connection with that claim, the AC alleges that "Dr. Kennedy was required, under [EMTALA] and New York law, to render . . . emergency health services to United members while he was on call at the various hospitals where they arrived in need of treatment." AC ¶ 70. On the premise that the court hearing this case will necessarily be required to resolve the disputed issue of whether EMTALA required Kennedy to render such services, United argues that the *Grable-Gunn* test is satisfied.

That is wrong. As explained below, the AC's allegations do not satisfy the first, third, or fourth elements of the *Grable-Gunn* test.

### A.    Necessarily Raised

To satisfy the first prong of the *Grable-Gunn* test, a claim must "necessarily depend on resolution of a . . . question of federal law." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)) (cleaned up). The "'mere presence' of a federal issue in a state cause of action" is insufficient. *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 622 (S.D.N.Y. 2013) (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). The necessity requirement is not met where the "claims may be assessed entirely by applying [state] common law standards to the facts in [the] case." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 396 (S.D.N.Y. 2014) (citation omitted).

Defending removal, United argues that the AC's unjust enrichment claim turns on the scope of Kennedy's obligations under EMTALA, a federal statute. It bases this argument on the AC's allegation that United was unjustly enriched insofar as it denied Kennedy compensation for

7

emergency medical services that federal and state law, including EMTALA, *see* AC ¶ 70,

obliged Kennedy to provide.

But these allegations do not *necessarily* require the resolution of a federal question. That

is because the AC alleges that two sources of law—EMTALA and NYPHL § 2805-b(2)(B)—

independently required Kennedy to provide emergency health services. And it alleges that the

obligations that the New York statute imposes parallel those under EMTALA. It pleads that

NYPHL § 2805-b(2)(B), like EMTALA, requires a "licensed medical practitioner" "to treat a

person arriving at a general hospital to receive emergency medical treatment who is in need of

such treatment." AC ¶ 24. The AC does not allege that EMTALA imposes any obligation—let

alone one relevant to Kennedy—beyond those imposed by NYPHL § 2805-b.[9] The AC thus

squarely pleads an independent state law basis for the background premise of its unjust

enrichment claim: that Kennedy was statutorily obliged by NYPHL § 2805-b to perform the

services for which he claims he was unjustly denied compensation.

---

[9] Seizing on two words within NYPHL § 2805-b—those describing the person needing emergency care as one "arriving at" a hospital—United argues that these made Kennedy's obligations greater under federal law than New York law. United Br. at 12. That is an *ipse dixit*. United does not offer a coherent textual interpretation as to why that prepositional phrase would make NYPHL § 2805-b's treatment obligation narrower than EMTALA's, let alone in a manner relevant to Kennedy. Nor does United cite supportive case law. The one case on which it relies for this point, *People v. Anyakora*, 616 N.Y.S.2d 149 (App. Div. 1993), is inapposite, as it addressed a different issue: whether NYPHL imposes strict criminal liability. *Id.* at 152. And, read in context, *Anyakora*'s use of the phrase "licensed medical practitioners at public and private general hospitals," *id.* at 57–58, was merely a shorthand to describe the medical personnel at issue. It did not construe the statutory term "arriving at," as United urges, to limit the NYPHL's coverage to physicians physically present at the hospital at the moment the patient arrived. *See id.* (sustaining indictment charging violation of § 2805-b over constitutional challenge); *see also, e.g., Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 35 (2012) ("[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, C.J.))).

Because the AC merely cites EMTALA as one among multiple sources of Kennedy's legal obligations, EMTALA's application to Kennedy is not a point "essential" to his unjust enrichment claim. *Tantaros*, 12 F.4th at 141 (citation omitted). In these circumstances, subject-matter jurisdiction does not lie under the *Grable-Gunn* test. Indeed, courts have consistently found against such jurisdiction where the case was capable of resolution without reaching federal-law issues. *See, e.g.*, *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140–41 (2d Cir. 2012) ("[I]f the Shinnecock were to have established that their construction of the casino complied with state and local law, the court could have resolved the case without reaching the federal issues. Because the claims do not necessarily raise a federal issue, the substantial federal question exception to the well-pleaded complaint rule does not apply."); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 801–02 (1988) ("Since there are reasons completely unrelated to the provisions and purposes of federal patent law why petitioners may or may not be entitled to the relief sought under their monopolization claim, the claim does not 'arise under' federal patent law."); *Standard & Poor's*, 23 F. Supp. 3d at 396 (although a federal law—the Credit Rating Agency Reform Act of 2006 ("CRARA")—had been invoked, it was not "necessarily raised" because plaintiffs' claims did "not *necessarily* depend on an interpretation of CRARA or any regulations enacted pursuant to CRARA." (emphasis in original)); *Connecticut v. RZ Smoke, Inc.*, No. 24 Civ. 190, 2024 WL 4501037, at *3 (D. Conn. Oct. 16, 2024) ("If a court is able to resolve the case without reaching the federal issues, then the claims do not 'necessarily raise' a federal issue.").

Thus, the AC, read with a focus on "what necessarily appears in the plaintiff's statement of his own claim," does not necessarily raise a federal question. *Tantaros*, 12 F.4th at 141 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75 (1914)).

9

### B.    Substantial

A complaint's allusion to federal law does not "open[] federal courts to any state action embracing a point of federal law." *Grable*, 545 U.S. at 314. The federal issue must be "substantial" in the relevant sense, that is, "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313. "An issue tends to be substantial if it is 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases.'" *Tantaros*, 12 F.4th at 145 (quoting *Empire Healthchoice*, 547 U.S. at 700). In contrast, resolution of "fact-bound and situation-specific" issues pertaining to federal law do not yield widely applicable legal standards and thus are "not sufficient to establish arising under jurisdiction." *Gunn*, 568 U.S. at 263 (quoting *Empire Healthchoice*, 547 U.S. at 701) (citation omitted). Put differently, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue." *Gunn*, 568 U.S. at 260 (emphasis and alteration in original). Substantiality instead depends on "the importance of the issue to the federal system as a whole." *Id.* For this reason, as the Second Circuit has explained, "after . . . careful, case-specific consideration, most federal law questions raised in connection with state law claims will not be deemed substantial." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1029 (2d Cir. 2014); *accord Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 570–71 (2d Cir. 1995).

Here, to the limited extent that the AC's allegations may require applying EMTALA to Kennedy's circumstances, such an assessment is narrow, fact-bound, and lacking systemic importance. The issue presented by Kennedy's lawsuit is whether his 182 claims for reimbursement to United were fraudulent. Even if the parallel NYPHL § 2805-b did not make EMTALA's obligations extraneous, EMTALA would play a peripheral role in resolving that

claim. It would be germane only in determining whether the particular hospital or hospitals where Kennedy was on call when he provided the emergency services qualified as "participating hospitals" under EMTALA. That determination is classically "fact-bound and situation specific"; its resolution is a far cry from an issue of pure law that "would govern numerous . . . cases." *Empire Healthchoice*, 547 U.S. at 700-01 (citation omitted). "And a case in which the issue is fact-bound, rather than purely legal, is far less likely to be useful to future parties and thus less likely to raise a substantial enough federal issue to merit the exercise of federal jurisdiction." *New York v. Sirius XM Radio Inc.*, 735 F. Supp. 3d 272, 280 (S.D.N.Y. 2024); *see AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 39 (2d Cir. 2025 ("The law draws this distinction" between fact-bound and non-fact-bound inquiries "to ensure that there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum,' . . . rather than simply a result that affects the particular parties" (citing *Grable*, 545 U.S. at 313)).

Courts in this Circuit have widely held similarly fact-bound legal issues non-substantial and thus have declined to exercise jurisdiction under *Grable-Gunn. See, e.g., Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*, 557 F. App'x 87, 90 (2d Cir. 2014) (summary order) (rejecting claim of arising under jurisdiction because "the determination at issue . . . is a fact-specific application of the regulations to [the plaintiff] that does not implicate the validity of the regulations themselves"); *AMTAX Holdings*, 136 F.4th at 39 (rejecting claim of arising under jurisdiction because "even if AMTAX can successfully argue that determining whether the provision has been complied with requires an interpretation of Section 42, we cannot say that AMTAX's state-law claims have broader importance 'to the federal system as a whole'"); *Pritika v. Moore*, 91 F. Supp. 3d 553, 558 (S.D.N.Y. 2015) (rejecting claim of arising under jurisdiction because "the application of a federal legal standard to [a] private litigant['s]

11

state law claims" does not weigh on the federal system as a whole); *Belmont v. JetBlue Airways Corp.*, 401 F. Supp. 3d 348, 361–62 (E.D.N.Y. 2019) (rejecting claim of arising under jurisdiction because the parties did not challenge the validity of the relevant federal regulation, and "a state court's ruling on the applicability of [the regulation] would be limited to the facts and circumstances of this case and would therefore not have any broader effect on federal interests").

For these reasons, the AC's allegations as to EMTALA do not implicate systemic issues. Allowing state courts to resolve whether and to what extent EMTALA imposes obligations on the hospitals at which Kennedy performed emergency medicine does not stand to undermine "the development of a uniform body of [health insurance] law." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989). And, to the extent future federal courts may examine decisions applying EMTALA to facts, relevant federal precedents, more than that which may be rendered by a state court in this case after remand, are likely to provide the most persuasive authority. *See Gunn*, 568 U.S. at 262 (state courts are expected to "hew closely" to relevant federal precedent).

United responds that the parties dispute the purely legal question of whether being on-call at a non-participating hospital triggers EMTALA. That dispute, it argues, presents a substantial question about EMTALA's reach. United Br. at 9. But the existence of such a dispute has been manufactured by United. The AC does not plead—and Kennedy has not argued in pursuing remand—that a doctor's on-call status, standing alone, triggers EMTALA obligations. *See* Kennedy Reply Br. at 7 (noting that Kennedy has not argued that EMTALA applies based on the fact that he was "on-call" and that the issue raised by United "is *not* in dispute" (emphasis in original)); *id.* (acknowledging that "there is no credible argument [Kennedy] could make to

12

extend EMTALA's obligations beyond 'hospitals that participate in the federal Medicare program' and their on-call physicians" (quoting *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 792 (2d Cir. 1999)); *cf. Royal Canin*, 604 U.S. at 26 ("[T]he determination of jurisdiction is based . . . not on any issue the defendant may raise."); *Franchise Tax Bd.*, 463 U.S. at 9–10) (similar).

And such a dispute, even if presented, would be fact-bound.[10]

United also argues that this case raises EMTALA issues of significance to the federal government, *see* United Br. at 17, but that, too, is wrong. None of the pertinent arms of the federal government—including the Department of Health and Human Services and the Centers for Medicare and Medicaid Services—is a party in this case, none has intervened to claim an interest in the outcome of this case, and United does not coherently explain why their regulatory authority or work would be affected by its outcome. This case is thus starkly different from *Grable*, which presented issues construing the federal tax code whose resolution stood to affect IRS operations. 545 U.S. at 315; *see also Empire Healthchoice*, 547 U.S. at 700 (federal jurisdiction lacking because, *inter alia*, plaintiffs did not challenge the action of any federal

---

[10] Relatedly, United's brief can be read to imply that disputes as to EMTALA's application are outside the competence of the state courts to resolve. *See* United Br. at 17. That is wrong. State courts not infrequently are called upon to apply complex federal statutes, *see, e.g., Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. Oxford Health Ins. Co.*, 182 N.Y.S.3d 551, 554 (Sup. Ct. 2022) (construing the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC § 1003(a)); *Targoff v. Wells Fargo Bank, N.A.*, 122 N.Y.S.3d 493, 498 (Sup. Ct. 2020) (same as to Bank Secrecy Act, 31 U.S.C. § 5311); *Morrison v. Hain Celestial Grp., Inc.*, 971 N.Y.S.2d 391, 395 (Sup. Ct. 2013) (same as to Dodd-Frank Act, 15 U.S.C. § 78n–1), including EMTALA, *see, e.g., River Park Hosp., Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 173 S.W.3d 43, 59– 60 (Tenn. Ct. App. 2002) (finding that an insurance company had been unjustly enriched when it failed to pay for emergency services rendered to insurance plan holders under EMTALA by an out-of-network hospital); *Hung Dang v. Washington State Dep't of Health, Med. Quality Assurance Comm'n*, 10 Wash. App. 2d 650 (2019) (affirming state agency's finding that otolaryngologist violated EMTALA by refusing to treat patient at hospital where he was on call).

agency). United, in short, has not identified a plausible scenario in which this case—effectively a billing dispute—would implicate issues of "broad importance to the national economy" or "the functioning of the government." *Sirius XM Radio Inc.*, 735 F. Supp. 3d at 280.

Thus, even if the AC's allegations were to require resolution of an issue as to EMTALA, that issue is not substantial.

## C.    Balance of Federal and State Judicial Responsibilities

As to the fourth *Grable-Gunn* factor, exercising federal jurisdiction here would unsettle the appropriate balance of federal and state judicial responsibilities, for several reasons.

For one, the Supreme Court has held that where no substantial federal issue is implicated, the exercise of federal jurisdiction over a state-law claim would disrupt that balance. *See Gunn*, 568 U.S. at 264 ("It follows from the foregoing [lack of substantiality] that *Grable*'s fourth requirement is also not met."); *see also Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 916 (2d Cir. 2024).

For another, the Supreme Court has held that, where Congress has deliberately chosen not to create a federal remedy for a violation of federal law, that bespeaks its judgment that such issues should remain within the state-court domain. *See Merrell Dow*, 478 U.S. at 804. The absence of a federal cause of action is an "important" signal that Congress intended to preserve the primacy of state courts in resolving such disputes. *Grable*, 545 U.S. at 318. EMTALA creates a cause of action for patients injured by a hospital's refusal to provide emergency services, allowing the patient to seek "those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." § 1395dd(d)(2)(A). It does *not* create a private right of action—let alone for contract breach or unjust enrichment—for emergency-care physicians who wish to sue health insurers for non-payment for plan participants to whom they rendered emergency services. Kennedy Br. at 1.

14

Congress's implicit judgment not to federalize such issues merits deference and supports resolution of Kennedy's claims in state court. *Grable*, 545 U.S. at 318; *see also, e.g.*, *Gunn* 568 U.S. at 264 (stating that legal malpractice claims should be resolved in state courts); *Link Motion*, 103 F.4th at 916 (finding that the established federal-state balance weighs in favor of remand because "DLA Piper cites no authority suggesting 'congressional[ ] approv[al]' for relocating legal malpractice claims away from their traditional state fora to federal courts" (quoting *Grable*, 545 U.S. at 314) (modification in original)); *AMTAX Holdings*, 736 F. Supp. 3d 169, 185 (S.D.N.Y. 2024) (federal jurisdiction not proper in case presenting questions of federal tax law, because "[a]llowing federal jurisdiction over countless state-law tort claims concerning accountants' interpretation of the Code would clearly disrupt the appropriate balance of federal and state judicial responsibilities"), *aff'd* 136 F.4th 32 (2d Cir. 2025); *New York v. Amazon.com, Inc.*, 550 F. Supp. 3d 122, 135 (S.D.N.Y. 2021) (finding no arising under jurisdiction because "Congress has already approved a balance where state labor and workplace safety laws coexist with federal standards").

United counters that exercising jurisdiction here would not disturb the balance of judicial responsibilities, because, it projects, federal-court dockets will not be flooded with state-law claims by emergency care providers against insurance carriers. United Br. at 20. United bases this assertion on the No Surprises Act (the "NSA"), 42 U.S.C. § 300gg-111, a federal law which, it contends, supplies an "exclusive remedy" for out-of-network healthcare providers seeking payment for emergency services provided after January 1, 2022, United Br. at 20–21. But United's depiction of the NSA—as supplanting state-law remedies for medical providers—is not anchored in any legal authority. Courts have explained that the NSA "prevents emergency service providers from holding a *patient* liable for the balance of a bill." *Ass'n of Air Med.*

*Servs. v. U.S. Dep't of Health & Hum. Servs.*, No. 21 Civ. 3031, 2023 WL 5094881, at *1 (D.D.C. Aug. 9, 2023) (emphasis added); *accord Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 110 F.4th 762, 767 (5th Cir. 2024) ("The No Surprises Act is intended to protect *patients* from 'surprise' medical bills by limiting the amount an insured patient will pay for emergency services furnished by an out-of-network provider." (emphasis added) (cleaned up)). And United has not identified any authority holding that the NSA bars medical providers from bringing state-law claims against the patient's insurer. *See* 42 U.S.C. § 300gg-111.  On the contrary, the NSA's preemption clause states that the NSA "shall not be construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with individual or group health insurance coverage except to the extent that such standard or requirement prevents the application of a requirement" under the statute. *Id.* § 300gg-23.  The NSA thus does not assist United with respect to the fourth *Grable-Gunn* factor.

In sum, the AC's allegations fail three of the four required elements of the *Grable-Gunn* test.  Federal jurisdiction does not lie.

## CONCLUSION

For the reasons above, the Court grants Kennedy's motion to remand for lack of subject-matter jurisdiction.  In light of this holding, it denies United's motion to dismiss as moot.  That dismissal is without prejudice to renewal upon remand to state court.

The Court respectfully directs the Clerk of Court to transfer this case to New York State Supreme Court, to terminate all pending motions, and to close this case as a federal-court action.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 20, 2025
      New York, New York